___ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

JUN 20 2012

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| THOMAS ALSTON | ) |
| Plaintiff, | ) |
| | ) AW 12 CV 1819 |
| v. | ) CIVIL ACTION NO. _____ |
| | ) **JURY TRIAL DEMANDED** |
| BANK OF AMERICA, N.A. | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Thomas Alston, and for his complaint against the Defendant Bank of America, N.A. ("Bank of America"), alleges as follows:

### Preliminary Statement

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act or FCRA).

### JURISDICTION & VENUE

2. The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331. Venue in this District is proper in that Bank of America transacts business here and the conduct complained of occurred here.

### PARTIES

3. Plaintiff Thomas Alston is a natural person and resides in the State of Maryland. He is a "person" and "consumer" as defined by the FCRA, 15 U.S.C. §1681a(b) and (c).

4. Defendant Bank of America is a national banking association organized under the laws of the United States. BAC Home Loans Servicing was merged into Bank of America, N.A. effective July 1, 2011. BAC Home Loans Servicing acquired the loans of Countrywide Home

1

Loans in 2008. Bank of America is a mortgage originator and mortgage servicer, and it is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

## FACTS

5. On December 12, 2003, Mr. Alston closed on a loan to purchase a home, and Countrywide Home Loans was the servicer for the loan.

6. In July 2004 Mr. Alston was approved by a lender to refinance the property. Mr. Alston contacted Countrywide by letter requesting a payoff statement, loan history, a current copy of the Note and a date and time to inspect the actual Note.

7. The deed of trust contractually obligated Countrywide to mark the Note paid and return the Note upon satisfaction of the obligation.

8. Countrywide provided a copy of the Note that was not payable to it and did not schedule a date for Mr. Alston to inspect the original Note.

9. In correspondence to Countrywide Mr. Alston responded by requesting the identity of the owner and/or holder of the Note and a copy of the agency agreement between Countrywide and the holder/owner. Countrywide responded by providing another copy of the Note, which was not payable or endorsed to Countrywide.

10. Countrywide was not legally entitled to enforce the Note and Mr. Alston refrained from making further payments upon learning Countrywide had no legal authority to enforce the Note.

11. Despite its lack of legal authority to enforce the Note Countrywide declared the loan in default and subsequently initiated foreclosure.

12. The Notice of Foreclosure stated that the Bank of New York as Trustee for the certificateholders of CWABS 2004-02 was the holder of the Note.

13. Mr. Alston filed bankruptcy to stop Countrywide from foreclosing.

14. Mr. Alston sold the property and fully satisfied the Note on June 10, 2005.

15. Mr. Alston requested the Note be mark paid and returned by Countrywide.

16. Mortgage Electronic Registration Systems (MERS) executed a Certificate of Satisfaction dated 6/22/2005 acknowledging the Note has been fully paid and that MERS as the holder of the Note released the deed of trust. MERS also executed an Affidavit of Lost Note that contradictorily averred the Note was returned to the maker while simultaneously averring the Note had been lost.

17. In September 2009 Mr. Alston obtained his credit reports and discovered that BAC Home Loans Servicing, LP was reporting the Countrywide mortgage account as over 120 days delinquent and in foreclosure.

18. Countrywide had no legal authority to declare Mr. Alston in default of the loan or to report Mr. Alston late to the credit reporting agencies.

19. Within the last two years of the filing of this action Mr. Alston disputed the account with Experian, Equifax and Transunion on one or more occasions.

20. Mr. Alston also disputed the account directly with Bank of America.

### *Bank of America Reporting to Experian*

21. On or about August 4, 2011 Bank of America responded to Experian's investigation of one of Mr. Alston's disputes by stating the account was 180 days late in May 2005.

22. Mr. Alston responded by immediately sending another dispute letter to Experian.

23. On or about September 6, 2011 Bank of America either could not adequately verify the account to Experian or instructed Experian to stop reporting the account.

## Bank of America Reporting to Transunion

24. On or about March 29, 2010 Bank of America responded to Transunion's investigation of a dispute by Mr. Alston by instructing Transunion to report the account as 120 days late as of May 2005.

25. Mr. Alston sent another dispute to Transunion challenging again Bank of America's erroneous reporting of the account.

26. Sometime subsequent to Mr. Alston's dispute and July 17, 2011 Bank of America reported the account as a satisfactory account with no late payment history.

27. On or about August 10, 2011 Bank of America began instructing Transunion to report the account as 90 or more days late in January 2005 again.

28. On or about October 31, 2011 Mr. Alston disputed the account again with Transunion and on November 11, 2011 Bank of America confirmed the account as 90 days late in January 2005.

## Bank of America Reporting to Equifax

29. Prior to and on March 10, 2011 Bank of America was reporting the mortgage account as 90 days late in January 2005 to Equifax.

30. Mr. Alston disputed the Bank of America account with Equifax. Bank of America confirmed the account as being reported correctly to Equifax on or about July 22, 2011.

31. Mr. Alston followed up with another dispute of the Bank of America account with Equifax.

32.     At some point subsequent to Mr. Alston's follow up dispute Bank of America began reporting the account as a satisfactory account with no late payment history to Equifax.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT

## 15 U.S.C. §1681 s-2(b)

33.     Plaintiff realleges and incorporates paragraphs 1 through 32 above as if fully set out herein.

34.     Bank of America both negligently and intentionally violated the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct a reasonable investigation with respect to the Bank of America mortgage account.

35.     At all times during its investigations of Mr. Alston's disputes, Bank of America had access to or actual possession of the entire Alston file. Bank of America knew that it was not legally entitled to enforce the Note during the time period that Mr. Alston was reported delinquent on his mortgage payments. Bank of America knew that Mr. Alston only stopped paying once Bank of America could not prove it was legally entitled to enforce the Note. As evidence by Bank of America's current reporting of the account with Equifax Bank of America knew Mr. Alston was never legally delinquent on his mortgage payments.

36.     Bank of America should have complied with Maryland law as to who can enforce a Note and reported the account accordingly without any contact from Mr. Alston. Thereafter, Bank of America received numerous notices of dispute from the credit reporting agencies requesting that Bank of America investigate the information that it was reporting about Mr. Alston. With reckless disregard for its duties to reinvestigate the dispute, Bank of America continued to report that Mr. Alston was delinquent on his mortgage payments. This credit reporting was inaccurate and would not have continued had Bank of America conducted a proper

investigation into the numerous disputes that Mr. Alston made through the credit reporting agencies.

37. Said actions of Bank of America were done negligently or with a reckless disregard for Mr. Alston's rights under the FCRA at §1681s-2(b)(1)(D) & (E). Bank of America reported the same account differently to the three credit reporting after receiving materially identical disputes from each credit reporting agency. Bank of America eventually stopped reporting the Bank of America account to Experian after investigating Mr. Alston's dispute with Experian of the account. Bank of America did not modify, delete or block the reporting of the Bank of America account but continued to report the account as delinquent to Transunion after investigating Mr. Alston's dispute with Transunion of the account. Bank of America eventually modified its reporting of the Bank of America account to Equifax by reporting the account as satisfactory.

38. Upon information and belief Mr. Alston's credit report was furnished to creditors with the inaccurately reported Bank of America account.

39. As a result of conduct, actions and inactions of Bank of America, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket costs, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

40. Bank of America's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. *In the* alternative, Bank of America was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

41. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Bank of America in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### PRAYER FOR RELIEF

WHEREFORE, your Plaintiff prays for judgment for actual, statutory and punitive damages against Bank of America; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

THOMAS J. ALSTON

By _[signature]_

Thomas J. Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
*Pro se*